UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| DEBBIE J. AIMETTI, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) NO. 2:17-CV-006 |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the United States Magistrate Judge by consent of the parties and order of reference [Doc. 15]. Plaintiff's Disability Insurance Benefits ("DIB") application under the Social Security Act, Title II (the "Act") was denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 16 & 18] with a supporting memorandum [Docs. 17 & 19].

### I. APPLICABLE LAW

### A. Choice of Law

Pursuant to 42 U.S.C. § 405(g), a civil action seeking review of a decision of the Commissioner "shall be brought in the district court of the United States for the judicial district in which the plaintiff resides." The administrative steps in this matter, including the issuance of the decision, were conducted in New Jersey because Plaintiff, Debbie J. Aimetti ("Aimetti") resided in the state. (Doc. 11, Transcript pp. 16, 35) (reference to "Tr" and the page denote the administrative record). However, at the time she filed her Complaint, Aimetti was a Sullivan County, Tennessee resident required to file her action in this judicial district.

Aimetti contends that this Court must apply Third Circuit law and notes this Court

determined in prior cases that the law of the circuit in which the administrative matter occurred is applicable. The Commissioner does not offer argument in response, but clearly maintains Sixth Circuit law controls as the Commissioner's dispositive motion relies on Sixth Circuit authority.

The Sixth Circuit has not addressed the issue of the applicable law in a situation such as the one presented here. Several district courts have addressed the issue. *See Powell v. Colvin*, No. 5:12-cv-157-LLK, 2014 WL 689721, at *1 (W.D. Ky. Feb. 20, 2014) (applying Ninth Circuit case law to administrative decision issued in Washington) (citing *Pierce v. Colvin*, No. 7:12-cv-129-D, 2013 WL 3326716, at *3 (E.D.N.C. July 1, 2013); *Mannella v. Astrue*, No. CIV 06-469-TUC-CKJ (BPV), 2008 WL 2428869, at *1 (D. Ariz. June 12, 2008) (applying Tenth Circuit case law to administrative decision issued in Colorado). In reliance on many of these cases, this Court previously addressed the question of applicable law in *Ellis v. Comm'r of Soc. Sec.*, No. 2:15-cv-253 (E.D.T.N. 2015) and *Reece v. Comm'r of Soc. Sec.*, No. 2:11-cv-00378 (E.D.T.N. 2011) and determined that the law of the circuit in in which the administrative matter took place is applicable. Thus, this Court will apply Third Circuit law.

**B.  Standard of Review**

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A court may not review the case *de novo* or reweigh the evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). The claimant has the burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). The Commissioner has the burden to establish the claimant's ability to work at step five. *Id.*

## II. RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A. Procedural History

Aimetti filed a DIB application on January 22, 2013, alleging impairments she believed to be disabling. She alleged an onset date of May 15, 2010. (Tr. 16). Aimetti had insured status through September 2017. (Tr. 18). Her claim was initially denied in April 2013 and upon reconsideration in July 2013. (Tr. 16). An ALJ conducted a hearing on June 22, 2015. (Tr. 35-69).

The ALJ followed the five-step analysis in evaluating the claims. The ALJ found Aimetti had severe medical impairments, but was not disabled. The findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2017;

2. The claimant has not engaged in substantial gainful activity since May 15, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*);

3. The claimant has the following severe impairments: epilepsy; osteoarthritis, degenerative disc disease of the cervical/lumbar spine; carpal tunnel syndrome and right shoulder sprain (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to jobs that are posturally immaterial, in that the job can be performed in the standing or seated position;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born [in] . . . 1977 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1543);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568);

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569; 404.1569(a) and 404.1569(d)); and

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2010, through the date of this decision. (20 CFR

404.1520(g)).

(Tr. 18-26).[1] The Appeals Council denied Plaintiff's review request. (Tr. 1).

**B.      Evidence in the Record**

The ALJ's decision summarizes the evidence. (Tr. 16-26). The parties' briefs also include overviews of the evidence and history [Doc. 17, pp. 2-8; Doc. 19, pp. 2-5]. Reference to the evidence is only set forth herein as necessary.

**III.    ANALYSIS**

Aimetti primarily asserts errors related to the Vocational Expert's ("VE") testimony. These include the contention that hypothetical questions to the VE did not include all of her "uncontradicted" impairments, particularly her mental impairment that the ALJ declined to find was severe, and the questions failed to comply with SSR 00-04p regarding conflicts between VE testimony and the Dictionary of Occupational Titles ("DOT").  Aimetti also contends the ALJ failed to properly weigh her subjective allegations.

**A.      Vocational Expert Testimony**

**1.      Background**

The VE was the final witness at the administrative hearing. Before his testimony began, the ALJ noted the VE had prepared a document[2] that identified Aimetti's past work (Tr. 66). The document was provided to Aimetti's counsel who then posed a hypothetical question about a claimant with certain characteristics and limitations. (Tr. 66-67). These limitations did not include a mental limitation but did limit the claimant to less than sedentary work. The VE responded that such a claimant would be incapable of doing any jobs (Tr. 67). Aimetti's counsel declined to ask further questions.

---

[1] A discussion follows many of the findings. Such discussion is not repeated here unless necessary.

[2] This document is not included in the transcript of the administrative proceedings. It is not determinative of the outcome here, however.

5

The ALJ then questioned the VE. Referring to the aforementioned document prepared by the VE, the ALJ asked whether he had identified sedentary jobs for which Aimetti had transferable work skills. (*Id*.). In response, the VE identified a sedentary, semiskilled appointment clerk occupation and stated the number of jobs that exist nationally. (*Id*.) The ALJ asked whether this occupation would allow the worker to perform the position in either the standing or seated position or otherwise be considered posturally immaterial. (*Id*.) The VE advised "one" job would be posturally immaterial. (Tr. 68). The ALJ then posed a hypothetical question in which the claimant was further limited to understanding and remembering simple, routine instructions, carrying out repetitive tasks, dealing with minor or few changes in a routine work setting and only making simple work-related decisions. The VE advised that such limitations would preclude all jobs. (*Id*.)

The ALJ next asked the VE whether jobs exist which are sedentary and unskilled and characterized as posturally immaterial. The VE advised that the surveillance system monitor occupation exists and there are 90,000 jobs nationally. (*Id*.) Lastly, the VE testified the occupations identified, including the monitor position, would be excluded if the limitations identified by Aimetti's counsel applied. (*Id*.)

The ALJ ultimately found Aimetti has the residual functional capacity to perform sedentary work in jobs that may be performed in either the standing or seated position and found that jobs exist in significant numbers in the national economy that Aimetti can perform. (Tr. 25).

**2.     Limitations in Hypothetical Questions to the Vocational Examiner**

Aimetti contends that the ALJ failed to include all of her uncontradicted impairments in the hypothetical questions to the VE. She specifically argues that the ALJ erred by failing to identify any mental limitations arising from depression on her ability to work. The Third Circuit has established a framework to determine whether a limitation should be included in a hypothetical question to a VE:

> First, limitations that are supported by medical evidence and are "otherwise uncontroverted in the record" *must* be included in the ALJ's hypothetical for us to

6

rely on the VE's response to that hypothetical. [*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)]. However, where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical. *Id.* This discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason. *Id.* Finally, the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible. *Id.*

*Zirnsak v. Colvin*, 777 F.3d 607, 614-15 (3d Cir. 2014). Further:

This Circuit does "not require an ALJ to submit to the [VE] every impairment *alleged* by a claimant." Rather, the ALJ is only required to submit credibly established limitations. Where, as here, a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE.

*Id.* at 615 (citations omitted).

During the hearing, Aimetti's counsel asked about her use of Prozac for treatment of depression and whether the medication was prescribed by her family doctor. (Tr. 57). She responded that her psychiatrist prescribed the medicine and explained she had been seeing a psychiatrist for over a year at approximately three month intervals and that she also sees a therapist. (Tr. 58). When the ALJ asked whether the records of this treatment were in the record, Aimetti's counsel responded that he did not think so because he was just learning of her treatment. (*Id*.). The ALJ gave Aimetti 30 days after the hearing to supply her mental health records. (*Id*.)

The transcript contains 13 pages of records from Dr. Ewaen Okao of AtlantiCare Behavioral Health. These reflect an intake session on September 16, 2014, a psychiatric evaluation on September 20, 2016, and appointments on October 10 and November 14, 2014, January 22, 2015, and June 9, 2015. (Tr. 714-26). The records indicate Aimetti was also seeing a therapist, but the transcript contains no records of such treatment.

A review of the medical history, including Dr. Okao's records, reveals that no provider identified or suggested the existence of mental limitations for Aimetti with regard to work. In fact, Dr. Oako's records consistently indicated Aimetti's mood was generally "OK" and she was well-

7

groomed, fully oriented, cooperative, used normal speech, experienced "ok" or good sleep and had a good appetite, among other things. (Tr. 19, 306-31).

The ALJ asked Aimetti how depression affects her and how she copes with it. She did not identify limitations beyond claiming that she had experienced episodes of crying and remaining in bed for several days at a time. (Tr. 59-60). While she claimed this problem occurred three times in the prior year, Aimetti could not recall the last time it occurred. (*Id*.).

Next, the majority of Aimetti's DIB application submissions to the Commissioner do not identify that she has a mental health impairment or assert that a mental impairment causes, in whole or part, her disability. (Tr. 287, 306-31, 342). The only indication of a mental condition in the DIB submissions was the inclusion of Celexa on Aimetti's handwritten medication listing with a notation that it was prescribed for depression. (Tr. 344).

Similarly, there is little history of depression in the medical records preceding Aimetti's six appointments with Dr. Okao. The only indication of an unspecified mental health issue was the inclusion of Prozac in a handful of current prescription lists in Aimetti's medical records in late 2014 and early 2015. (Tr. 559, 706, 708, 710).

The ALJ considered the evidence relating to mental health and determined that while Aimetti sought care for depression, the condition appeared well controlled. This is borne out by the content of the limited records of care and treatment. The ALJ also found that depression did not appear to impose any significant work-related limitations. The ALJ's analysis of depression supports ALJ's RFC determination. The ALJ found that Aimetti had no limitations in any of the four domains to include the following: daily living, social function, persistence and pace, and episode of decompensation. (Tr. 20). The ALJ noted that she did not have limitations in her activities of daily living or social functioning, particularly since she used public transport and shopped and was thus required to be in close proximity to and interact with others. (Tr. 20). The ALJ found "no to mild" limitation in concentration, persistence or pace because she could handle

8

finances, pay attention through a conversation, follow instructions and was fully oriented, without memory impairment or perceptual disturbances and exhibit relevant thought processes. At best, the ALJ felt Aimetti might experience distraction from pain from conditions he identified as severe. (Tr. 20). Aimetti does not identify any clinical evidence indicating problems in her memory, concentration or social functioning. While the ALJ posed a hypothetical to the VE that included a range of mental limitations, he did not ultimately adopt those limitations in the RFC he found appropriate. (Tr. 68).

Aimetti argues that her GAF score of 50 is indicative of a severe mental impairment. (Tr. 718). The Court notes, however, the ALJ considered the GAF score and that it was not consistent with the narrative in the medical records showing her mental status was normal (Tr. 19). The ALJ properly discounted the GAF score. See *Brown v. Colvin*, 193 F. Supp. 3d 460, 465 (E.D. Pa. 2016) ("The Social Security Administration permits ALJs to use GAF ratings as opinion evidence in claims of mental disorders, but instructs a GAF score is never dispositive of impairment severity, and an ALJ should not give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence.")(citations and quotations omitted). The Court finds the ALJ appropriately exercised his discretion to reject the inclusion of any mental health limitation in the RFC. In fact, the ALJ noted Aimetti had been treated for depression but "this condition appears well controlled and does not appear to impose any significant work-related limitations." (Tr. 25). The ALJ cited and relied upon evidence that supports his conclusion in determining there was no credible mental impairment. The Court finds substantial evidence supports the ALJ's conclusion in that regard.

**3.     Existence of Conflicts with the DOT**

Aimetti contends the ALJ erred in not asking the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). The district court in *Jones v. Astrue,* 570 F.

Supp. 2d 708, 715–16 (E.D. Pa. 2007), provided the following summary of third circuit law in regards to this issue:

> SSR 00–4p, 2000 WL 1898704 at *1 (2000), "emphasizes that before relying on VE ... evidence to support a disability determination or decision, the adjudicators must" (1) identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs and information in the DOT and (2) "[e]xplain in the determination or decision how any conflict that has been identified was resolved." By its literal terms, SSR 00–4p applies only to VE testimony constituting "evidence about the requirements of a job or occupation," not to VE testimony that simply identifies a list of jobs. *Rutherford* [*v. Barnhart,* 399 F.3d 546, 557 (3d Cir.2005)](quoting SSR 00–4p). Nevertheless, SSR 00–4p is "exemplary, rather than exhaustive," as the ALJ must reconcile inconsistencies between VE testimony and DOT information in fulfilling the obligation to develop the record fully. *Id.*

*Jones v. Astrue*, 570 F. Supp. 2d 708, 715–16 (E.D. Pa. 2007), *aff'd sub nom. Jones v. Comm'r of Soc. Sec.*, 275 F. App'x 166 (3d Cir. 2008).

Although the ALJ did not ask the VE whether conflicts existed between his testimony and the DOT, the VE's testimony and the DOT do not conflict because the DOT does not address sit/stand options. Thus, the ALJ properly relied on testimony from the VE that Aimetti could perform the surveillance monitor occupation without inquiring about the existence of a conflict. *See Sanborn v. Comm'r of Soc. Sec.*, 613 F.App'x 171, 177 (3d Cir. 2015) and *Conn v. Astrue*, 852 F.Supp.2d 517, 528 (D. Del. 2012); *see also Dewey v. Coleman,* 650 F.App'x 512 (9th Cir. 2016) (holding there was no conflict where the DOT was silent as to whether particular jobs in question allowed for a sit/stand option and the VE testimony indicated the claimant who required the sit/stand options could perform the jobs); see also *Primm v. Astrue*, 3:12-CV-03035, 2013 WL 3367103 at *12 (M.D. Tenn. July 3, 2013)(VE opinions regarding sit/stand options are not contradictory to the DOT). The Court finds no error with regard to the testimony as to the surveillance monitor occupation.

Aimetti correctly notes and the Commissioner concedes, the ALJ erred in finding Aimetti could perform the work of an appointment clerk because the ALJ and the VE relied on a document that was not included in the certified administrative record. (Tr. 67). However, the Court agrees with the Commissioner's argument that this was harmless error. The VE also identified another position Aimetti could perform, that being a surveillance monitor. Because this position was appropriately identified as a job Aimetti can can perform and 90,000 jobs in the national economy unquestionably constitutes a sufficient number of jobs to support a finding that work exists in significant numbers, the Commissioner's burden at step five was satisfied with this single occupation. *See Young v. Astrue*, 519 F.App'x 769, 772 (3d Cir. 2013) (finding 20,000 jobs nationally to be sufficient to support a finding that work exists in significant numbers; *Ahmad v. Comm'r of Soc. Sec.*, 531 F.App'x 275, 278 (3d Cir. 2013)(finding 200 jobs in the *regional* economy that the claimant could perform to be a significant number). Remand is not warranted in this case because the error was harmless, that is, it did not prejudice Aimetti on the merits or deprived her of substantial rights. See *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (3d Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (3d Cir. 2004)).

**B.     The ALJ's Assessment of Subjective Complaints**

Aimetti asserts the ALJ failed to properly weigh her subjective allegations and credibility. An ALJ is not required to accept a claimant's subjective complaints, such as complaints of disabling pain in evaluating credibility but the ALJ "must consider the subjective pain and specify [the] reasons for rejecting these claims and support [the] conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reason for that weight." SSR 96–7p, 1996 WL 374186 at *3.

> The Third Circuit and SSR 96-7p offers guidance in making the assessment:
>
> This rul[ing] provides a two-step analysis for evaluating a claimant's credibility, including statements describing pain or limitations. *See* 20 C.F.R. § 416.929; SSR 96–7p, 1996 WL 374186 at *2. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment *449 that can reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(c), SSR 96–7p, 1996 WL 374186 at *2. Second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c), SSR 96–7p, 1996 WL 374186 at *3.

*Wilson v. Colvin*, 218 F. Supp. 3d 439, 448–49 (E.D. Pa. 2016).

In reviewing decisions, a court should give a credibility assessment great deference because an ALJ making the assessment is in the best position to evaluate the demeanor and attitude of a claimant *See, e.g.*, *Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir. 2001). The court should also and be reluctant to disturb the ALJ's findings where the ALJ has adequately explained the reasons for the credibility determination. *See Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 433 (3d Cir. 1999). Substantial evidence must support credibility assessments. *Id.*; *see also Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981) (noting that district courts "retain a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence").

Here, the ALJ's decision reflects that the ALJ found Aimetti's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements

about the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 22). The ALJ then made a thorough analysis of the grounds for this determination. (Tr. 22-24). He first analyzed Aimetti's self-reported activities of daily living and found them to be inconsistent with the existence of totally disabling symptoms. The ALJ next noted that the clinical and objective medical findings were also inconsistent with totally debilitating symptomatology. He reviewed, in exhaustive detail, the contents of a multitude of Aimetti's treatment records over the period of 2009 to 2015. These included, but were not limited to, records showing gaps in treatment, a variety normal test results, full strength in various tests over multiple medical appointments, normal flexion and extension in certain areas of her body, reports of feeling fine, and conservative treatment with medication. (*Id*.).

The ALJ noted in assessing Aimetti's allegations of total disability that she admitted she had no problem sleeping, dressing herself, bathing, feeding herself, preparing meals, dusting the house, doing laundry, washing some dishes, using public transportation, shopping in stores, handling her finances, getting along with others, paying attention, and following instructions. (Tr. 22). Regarding right wrist/hand pain, the ALJ noted that she reported that she was generally doing well with regard to "inflammatory joint pain in the peripheral joints." (Tr. 23). Regarding shoulder pain, the ALJ noted Aimetti's complaints, but observed that Aimetti reported the pain was only mild to moderate, that she had 5/5 motor strength, and that in September 2014, x-rays of both shoulders were normal. (Tr. 23). Regarding her back/neck pain, the ALJ noted she had 5/5 strength in her lower extremities with normal sensation and normal gait. The MRI of her lumbar spine was unremarkable. While the Court may have reached a different conclusion regarding Aimetti's subjective complaints, it cannot say the ALJ's decision regarding assessing Aimetti's credibility is out of line and not supported by substantial evidence. The Court finds that the ALJ complied

with the applicable Third Circuit authority and SSR 96-7p by identifying the reasons for rejecting Aimetti's claims and supporting his determination with a multitude of citations to the medical history. Substantial evidence supports the ALJ's treatment of Aimetti's subjective complaints.

## IV. CONCLUSION

Based upon the foregoing, the Court finds substantial evidence exists to support the ALJ's decision. Accordingly, the Plaintiff's motion for judgment on the pleadings [Doc. 16] is DENIED and the Commissioner's motion for summary judgment [Doc. 18] is GRANTED.

SO ORDERED:

s/ Clifton L. Corker         
UNITED STATES MAGISTRATE JUDGE
